## Case No. 4,406.
### ELLISON et al. v. The BELLONA.
[Bee, 106.] [1]
District Court, D. South Carolina.   Sept., 1798.

[1] [Reported by Hon. Thomas Bee, District Judge.]

BEE, District Judge. This is a cause of considerable importance between foreigners in a neutral court; and as it may lead to the establishment of a precedent, I have considered it with great attention. The libel is exhibited by twenty-four seamen of this ship for wages from the 20th May to the 27th of August. The causes of complaint are: 1st. A deviation from the voyage specified in the articles, and a prolongation of it by continuing twenty-three days off the coast of La Vera Cruz, instead of a few days, as agreed on. 2d. Severity on the part of the captain towards some of the crew. 3d. A discharge of part of the crew, since their arrival in this port. To this libel the captain interposes a claim, answer, and plea, on behalf of himself and the owners of the Bellona, a private ship of war belonging to subjects of Great Britain, and acting under letters of marque against France, Spain, and Holland. The plea (to the jurisdiction) has already been set aside; it remains for me to decide upon the answer and claim. These state two sets of articles, by one of which the crew are bound to proceed to the coast of La Vera Cruz, there to lie off and on for a few days, till the cargo should be landed; from thence on a cruize for six weeks, after which they were to return to Jamaica, as the master should direct. By another set of articles signed the same day the libellants shipped themselves as seamen on board the Bellona, as a private ship of war, letter of marque and reprisal, on a cruize from the harbour of Port-Royal against the ships and vessels of France, Spain, and the United Provinces. The answer denies that all the seamen behaved as they were bound to do, some of them having been disorderly and disobedient: some, who entered as able seamen were but ordinary; and others who knew and could perform their duty, neglected it on various occasions. It is denied that the voyage was prolonged on the coast of La Vera Cruz contrary to the true meaning and intent of the articles. Severity towards some of the libellants is admitted, as proceeding necessarily from their disobedience, disorderly, insolent, and mutinous, temper and conduct. Ill treatment beyond this exercise of discipline is denied. The answer admits that four of the libellants were allowed by the mate, in the captain's absence, to go on shore for one hour. They did not return in twenty-four hours; whereupon the captain refused them permission to go on board: he is now, however, ready to receive them. It is admitted that the clothes and wages of others of the libellants, who are named, were detained because they deserted, and were not entitled to wages until their return to Jamaica. The captain, nevertheless offers to take these men, also, on board, and to pay their wages in Jamaica, if they do their duty according to the articles. As to five seamen, who behaved so mutinously on board as to make their reception dangerous, the captain submits to the direction of the court, professing his utter unwillingness to let these people come on board. From this statement of the pleadings, three points arise for my decision: 1st. Whether the stay off the coast of La Vera Cruz is such a prolongation of the voyage as amounts to a breach of the articles. 2d. Whether the captain's severity to part of the crew will justify me in decreeing payment of wages and a discharge to them. 3d. Whether such as were voluntarily discharged in this port, and such as were refused admission on board for absence beyond their leave, are entitled to wages in the one case, and to wages and discharge in the other.

In determining the first point, the mercantile, not the warlike, character of the ship must be considered. She had a valuable cargo, great part of which was to be landed there. The seamen were shipped in a double capacity; they were to have wages, as belonging to a merchantman; and prize money as belonging to a letter of marque. The case quoted from Hopkinson, 122 [Brice v. The Nancy, Case No. 1,855], must be so construed as to protect the captain and owners, as well as the seamen, against too strict a construction of their contracts. In privateers monthly wages are not paid; the trading voyage occasioned their being stipulated for here. There was no wanton delay. The person, a Spaniard, who had agreed to purchase these goods, and to pay for them at La Vera Cruz, sailed in the Bellona from Jamaica, and left them at the Isle of Arcos that he might be ready with the money as soon as the ship should arrive off the coast. They cruized five or six days before he made his appearance. The goods were on deck and ready for delivery by the time this man and his boats were along side the ship. He had brought no money, and there was, of course, no delivery of the cargo. It appears, however, that he promised to return, prepared to pay for what he had bought. Would the captain, under such circumstances, have been justified to the freighters and owners if, by sailing away, he had totally defeated every purpose of the trading voyage? I think not. The Spaniard's return might be daily expected; wages went on, and the crew were liberally supplied. They knew the cargo was to be discharged at sea into boats; and that this must occasion additional delay and uncertainty. It might have been prevented for a week or ten days by rough weather. Would that have amounted to a deviation from the articles? Should the great interests of those concerned in this mercantile speculation have given way entirely to the commencement of a cruize in

which no certain interest was involved? At any rate, the vessel would have been much fitter for her business of cruizing, after the discharge of her cargo. [Case No. 1,855] lays it down that the constant practice of this court shews a greater liberality prevails here, in the construction of maritime contracts, than is found in the strictness of common law doctrines. This law applies to the case before me. An equitable construction of the articles, and the circumstances of the case concur to forbid my considering the delay off La Vera Cruz as a deviation sufficient to sustain this part of the libel.

The point of ill usage comes next. Of fifty men composing the crew, eight only complain of this. Four of these were in irons, some for a shorter, some for a longer time. One was threatened with death. The prizemaster put on board a captured vessel was shot at by the captain, while the prize was in tow, and cut over the head in the harbour. Ellison, upon giving some provocation, was desired by the captain to take his choice of a brace of pistols. This man, with two others, were ordered to remain below; but this, it seems, did not prevent their coming on deck when they pleased. They were refused cabin allowance but received ship's allowance from the cook. It is difficult for the judge of a neutral nation, not fully acquainted with the lex loci of the parties, to determine with precision questions of this sort; and I am happy to avail myself of the eloquent and able sentiments of a great admiralty judge, Sir James Marriott, as I find them delivered to the jury in a cause tried before him about six years ago. I have transcribed the charge verbatim, as well on account of its intrinsic merit, as because it appears strictly applicable to this ground of the libel before me. "You will call to mind continually," says he, "the state and condition of the parties concerned, the nature of their lives, business, and necessities. Consequently, in judging of matters committed on the high seas, you will take into view the state of society upon that element, where all is violence. This consideration makes a great difference between actions at sea, and actions on land, where every thing comes within sight and knowledge of the neighbourhood, and where the peace and tranquility of the subject is generally secure under a mild and moderate government. You have to judge of ferocious men, possessed of few, but strong ideas, peculiar to their employments; of men hardened by danger, and fearless by habit. The subjects of your deliberation are actions done on a sudden, vehement from the nature and necessity of the occasion. The preservation of ships and lives depends often upon some act of severe, but necessary, discipline. These scenes of violence present no very amiable picture of human nature; but such violence is frequently justifiable, sometimes absolutely necessary; because, without it, no commerce, no navigation, no defence of the kingdom can be maintained. The consideration of this should soften the rigour of judgment which might otherwise be made, on land, by persons ignorant and inexperienced of what is done at sea. It is painful to observe that, without the greatest care in weighing of evidence, no commander or officer of a ship can be safe upon his trial. In charge of the lives and properties of other men, contending with the most ferocious, upon an ungovernable element, a commander is placed every moment in danger of the loss of character and life. A ship is a little government, compressed into a narrow compass, in which there can be no hope of security for any man on board, without a rapid and strong occasional exertion of an absolute power placed in one man. Like other governments and situations, the command of a ship is open to the most horrid general combinations and conspiracies with all their consequences, fit to make the stoutest heart tremble. The passions operate, at sea, without control; and all, on board of a ship, is too often a scene of misery, terror, disorder, disobedience, resentment, and revenge." Let these Englishmen be judged by this rule of one of the ablest of their own lawyers, and then the conduct of the captain of the Bellona will appear in a more favourable light than it has been represented. Nevertheless, there are some parts of it highly censurable, particularly as to the man appointed to the command of the prize; and as to one other whom he threatened to shoot. If he had done it, I should have thought it murder; but if it was only in terrorem, it may well come within the necessity so ably stated by Sir James Marriott.

Upon the third point I am of opinion that Donnel the prizemaster, is entitled to his discharge and wages. The five men whom the captain is anxious to exclude from his ship may be discharged; but their wages must be paid. Those that left the ship before she was moored, under a short leave of absence, as they pretend, from the mate, were guilty of gross misbehaviour in extending it to twenty-four hours; but as the captain has offered to receive them again, and to pay them according to the articles, I shall not pronounce the contract dissolved. They were the aggressors, and must not be allowed to take advantage of their own wrong. Let them go on board and complete their voyage. I recommend to the captain to forgive and forget what has passed, and direct that he pay all costs of suit, since his refusal to receive some of the men on board occasioned a general application to this court for redress.